## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF IOWA

## CENTRAL DIVISION

|  |  |
|---|---|
| THE WEITZ COMPANY, LLC, | |
| Plaintiff, | No. 4:10-cv-00254 |
| vs. | |
| LEXINGTON INSURANCE COMPANY; ALLIED WORLD ASSURANCE COMPANY (U.S.), INC.; WESTCHESTER SURPLUS LINES INSURANCE COMPANY; ESSEX INSURANCE COMPANY; LLOYD'S OF LONDON, et. al., a/k/a UNDERWRITERS AT LLOYD'S; and various unknown insurers hereby named JOHN DOE INSURERS, | **ORDER** |
| Defendants. | |

## I. INTRODUCTION

Plaintiff, the Weitz Company, LLC ("Weitz") filed a Complaint against the Defendants on June 4, 2010.  [Dkt. No. 1.]  Defendants are Lexington Insurance Company ("Lexington"); Allied World Assurance Company (U.S.), Inc. ("Allied"); Westchester Surplus Lines Insurance Company ("Westchester"); Essex Insurance Company ("Essex"); and Lloyd's of London, et. al., a/k/a Underwriters at Lloyd's ("Lloyd's Underwriters").[1]  Weitz filed an amended complaint on October 28, 2010, a second amended complaint on March 3, 2011, and a third amended complaint on October 30, 2013.[2]  [Dkt. Nos. 24, 68, 204.]  The second amended complaint alleges two causes of action in equity: (1) subrogation and (2) unjust enrichment.[3]  [Dkt. No. 68.]

---

[1] Weitz filed a motion to dismiss Defendant RSUI Indemnity Corporation without prejudice, which this Court granted on March 9, 2011.  [Dkt. No. 65]; [Dkt. No. 73.]

[2] Weitz's second motion to amend an alleged deficiency to its complaint on October 30, 2013, or third amended complaint, is denied as moot.

[3] Weitz's claim in its original complaint was breach of insurance contract.  [Dkt. No. 89.]

Defendants filed motions to dismiss pursuant to the second amended complaint.[4]  On May 25, 2011, this Court issued an order denying Defendants' motions to dismiss.  [Dkt. Nos. 89.]

This matter now comes before the Court pursuant to Lexington/Allied's motion for summary judgment filed on April 4, 2013.  [Dkt. No. 148.]  The other Defendants, including Westchester, Essex, and Lloyd's Underwriters, joined Lexington/Allied's motion for summary judgment in part and filed separate briefs in support of summary judgment.[5]  [Dkt. Nos. 152, 153.]  On May 10, 2013, Weitz filed its resistance to Lexington/Allied's motion for summary judgment.  [Dkt. No. 156.]  The Court held oral argument on July 12, 2013.

This Court has diversity jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §1332(a)(1) and (a)(2) because there is complete diversity of citizenship between Weitz and the Defendants,[6] and an amount in controversy that exceeds $75,000, exclusive of interest

---

[4] With the exception of Westchester, the motions filed by the Defendants relating to the second amended complaint largely incorporate by reference the motions and briefings from the first amended complaint.

[5] Weitz is only making a claim in this case against Essex, Lloyd's Underwriters, and Westchester for damage to the towers. [Dkt. No. 152 Page 2]; [Dkt. No. 153 Page 2.]  All Defendants join and incorporate by reference the arguments Lexington/Allied made in their briefs regarding the following issues: choice of law (Section II.A.); equitable subrogation (Section II.B); unjust enrichment (Section II.C.); suit limitations relating to Weitz's claim for the damage to the towers (Section II.D.2.); and Weitz's unpaid contract balance, change order, and delay costs claims (Section II.E.).  Counsel for Essex, Underwriters of Lloyd's, and Westchester also made clear at the July 12, 2013 hearing on Defendants' motions for summary judgment that they were never placed on notice of the damage to the care center in 2004, or the damage to the towers in 2005. [Dkt. No. 185 Pages 50–51.]  Additionally, Westchester made a novel argument as to why it "independently seeks summary judgment." [Dkt. No. 153 Page 2.]  According to Westchester, "Weitz has failed to demonstrate a viable claim reaching Westchester's $40 million layer of coverage for the 2004-2005 policy year encompassing Weitz's claim for damage to the Towers." [Dkt. No. 153 Page 2.]

[6] The Weitz Company, LLC is an Iowa limited liability company with its principal place of business in Des Moines, Iowa.  The sole member of Weitz is The Weitz Group, LLC, with its principal place of business in Des Moines, Iowa.  The corporate members of The Weitz Group LLC, all of whom are Iowa corporations with their principal places of business in Des Moines, Iowa, are the Weitz Company I, Inc., The Weitz Company II, Inc., The Weitz Company III, Inc., and the Weitz Company IV, Inc.  The individual members of the Weitz Group, LLC are citizens of Arizona, Arkansas, Colorado, Florida, Hawaii, Iowa, and Wisconsin.  Defendants are all corporations in the business of providing insurance, including property insurance, to businesses and individuals.  Lexington is a Delaware Corporation with its principal place of business in Boston, Massachusetts.  Allied is a Delaware corporation with its principal place of business in New York, New York, or Boston, Massachusetts.  Westchester is a Georgia corporation with its principal place of business in Roswell, Georgia.  Essex is a Delaware corporation with its

and costs.[7]  Venue is proper in the Southern District of Iowa under 28 U.S.C. §1391(a)(2) because a substantial part of the events giving rise to the claim occurred therein.  After reviewing the parties' briefs and relevant case law, this Court finds that there is no genuine issue of material fact, and Defendants' motions for summary judgment are GRANTED.

## II. FACTS

This case arises from the construction of a retirement community in Aventura, Florida. On January 8, 2001, the plaintiff, The Weitz Company, LLC ("Weitz"), entered into a contract with CC-Aventura, Inc., an affiliate of the Hyatt Corporation ("Hyatt"), to build a luxury-life residential community.  It consisted of two 23-story residential buildings ("the towers"), an amenities building, an adjacent health center ("the care center"), a plaza deck, and a parking garage.  Upon its completion, Hyatt noticed defects in the property's workmanship.  The damage was severe: there were cracks in the stucco on the towers and care center; cracks and water intrusion in the concrete floor slabs in the towers; defects in waterproofing and inadequate drainage in the towers and care center; water and moisture intrusion through the window system in the towers and care center; and damage to the plaza deck.

According to the second amended complaint, Allied, Axis, Essex, Lexington, Lloyd's Underwriters, and Westchester provided "all risk" property insurance policies to Hyatt covering the project.  [Dkt. No. 142 Page 5]; [Dkt. No. 89 Page 4.]  For instance, in late 2003, Lexington and Allied World issued commercial first-party property insurance policies to Hyatt insuring multiple Hyatt properties throughout the United States.  [Dkt. No. 148-2 Page 4.]  These policies included the Classic-Aventura property in Florida.  [Dkt. No. 148-2 Page 4.]  The policies provided insurance coverage for "direct physical loss or damage" to the covered properties for certain periods of time.[8]  [Dkt. No. 148-2 Page 6.]  The policies covered losses occurring during the policy time periods, and included contractual limitations and notice provisions.

---

principal place of business in Glen Allen, Virginia.  Axis is a Georgia corporation with its principal place of business in Illinois.  Lloyd's Underwriters is a British corporation licensed to undertake insurance business in the United States of America.

   [7]  Weitz seeks to be reimbursed for the approximately $53 million that it paid to Hyatt to settle in 2010.  It also seeks to recover the value of an approximately $4.9 million counterclaim that it abandoned in settling with Hyatt.

   [8] Weitz seeks to recover damages under the Lexington and Allied World policies during three periods in which Lexington and Allied World insured various Hyatt properties, such as the Classic-Aventura property: (1) November 1, 2003 to November 1, 2004 (Lexington Policy No.

In 2005, Hyatt, Lexington, and Allied entered into a settlement agreement, in which Lexington/Allied agreed to pay Hyatt $750,000 for the reported claims arising from the project.[9] In return, Hyatt released Lexington/Allied from liability.  Weitz alleges that the agreement was coerced—that is, Lexington/Allied threatened not to renew Hyatt's coverage unless Hyatt agreed to a low settlement offer.  The settlement agreement related to the reports Hyatt made about damages to the care center in or about September 2004, and damages to the towers in or about July 2005.  Damages to the plaza deck were not reported until in or about the fall of 2008.

In 2006, after settling with Lexington/Allied, Hyatt filed a lawsuit against Weitz and MSA Architects, Inc. ("MSA") in the United States District Court for the Southern District of Florida, Miami Division, on grounds of breach of contract, breach of guaranty, and breach of applicable building codes.[10]  Hyatt sought to recover $102 million for the costs it incurred to repair the construction and design defects, and to remediate the impact the project had on Hyatt's business.  Weitz blamed its subcontractors, bringing third-party claims against them, and Weitz made claims against its liability insurers.  At that time, Weitz did not bring any third-party claims against Hyatt's first-party property insurers—the Defendants in this case.

In 2010, shortly before trial, Weitz entered into a settlement agreement with Hyatt.  Pursuant to the agreement, Weitz paid Hyatt approximately $53 million for the property damage Hyatt suffered.[11]  The Defendants allege that Weitz recovered $55,799,684 in connection with the litigation in Florida from settlements with its own liability insurers, subcontractors, and the sureties and insurers of its subcontractors.

---

1282118 and Allied World Policy No. AW1282118); (2) November 1, 2004 to November 1, 2005 (Lexington Policy No. 1282764 and Allied World Policy No. 1282765); and (3) November 1, 2007 to November 1, 2008 (Lexington Policy No. 4509080, 4508873, which was cancelled on June 15, 2008).  [Dkt. No. 148-2 Page 6.]  Allied World did not issue a policy insuring the Classic-Aventura project from November 1, 2007 to November 1, 2008. [Dkt. No. 148-2 Page 6.]  Weitz concedes Allied World is not liable as to the plaza deck claim because it did not have an insurance policy in effect during the 2007-2008 policy period.  [Dkt. No. 156 Page 30.]

[9] According to Lexington/Allied's counsel at the July 12, 2013 hearing, Hyatt made an insurance claim under one of Lexington/Allied's policies, and it was "investigated, negotiated, and paid . . ."  [Dkt. No. 185 Pages 7–8.]

[10] *CC-Aventura, Inc. et al. v. The Weitz Co., L.L.C.*, Case No. 1:06-cv-21598-PCH.

[11] The Defendants allege that Weitz paid $51.68 million, and MSA, the project architect, paid $2.32 million of the $53 million settlement.  [Dkt. No. 148-1 Page 10.]  Weitz alleges that MSA contributed only $1,318,161.06 of the $53 million settlement.  [Dkt. No. 156 Page 10.]

Later that same year, Weitz sued Hyatt's first-party property insurers—the Defendants—in this Court on a breach-of-contract theory.  Weitz amended its initial complaint to seek recovery in equity through subrogation and unjust enrichment.  [Dkt. No. 68 Page 6.]  Weitz alleges that the $53 million Weitz paid Hyatt for property damages should have been covered by Hyatt's insurance policies that were issued by the Defendants.  Based on assignments from entities that contributed to the Hyatt/Weitz settlement, Weitz now seeks to recover a counterclaim of $4,963,404.18 that Weitz gave up as a part of that settlement.

As to the equitable and/or legal subrogation claim, Weitz argues that the Defendants are primarily liable for the property damage to the project because: (1) Weitz paid Hyatt for the property damage covered by the Defendants' policies; (2) Weitz made the settlement payment to Hyatt to protect its own interests; (3) Weitz's settlement payment to Hyatt was not voluntary; (4) Weitz's settlement payment served as payment of Defendants' entire debt; and (5) given that the settlement payment made by Weitz to Hyatt should have been made by the Defendants, subrogation against the Defendants would not work any injustice to them.  *See In re Chapala Intern., Inc.*, No. 94–1208–CH, 1995 WL 17911422, at *3–4 (S.D. Iowa May 26, 1995) (articulating the five-part test to prove an equitable subrogation claim) (citing *In re Hagen*, 147 B.R. 166, 167 (Bankr. N.D. Iowa 1992)).

Regarding the unjust enrichment claim, Weitz asserts that it conferred a benefit on the Defendants because it covered the property damages that were the responsibility of the Defendants under their insurance policies.  For that reason, Defendants were unjustly enriched by the benefit that Weitz conferred.  It would be inequitable, Weitz argues, to allow the Defendants to retain the benefit without paying for its value.

The Defendants argue that Weitz has already been made whole from the payments it received after settling with Hyatt.  Therefore, Weitz cannot collect at law or in equity because it has already been reimbursed for everything it paid Hyatt in 2010.  In addition, the Defendants contend that no amount of the settlement paid by Weitz to Hyatt was a liability owed by the Defendant insurers.  Finally, the Defendants also argue that Weitz's claims fail as a matter of law because Weitz's claims are barred by the release Lexington/Allied received from Hyatt, and the suit limitation clauses and notice provisions in Defendants' insurance policies.  Because the Defendants only insured against "direct physical loss or damage" to the insured property, they argue that Weitz cannot recover for an alleged breach-of-contract counterclaim.

## III. STANDARD FOR SUMMARY JUDGMENT

"Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Carraher v. Target Corp.*, 503 F.3d 714, 716 (8th Cir. 2007) (citing Fed.R.Civ.P.56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. The requirement of a "genuine" issue of fact means that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In other words, the nonmoving party is not "relieved" of its "own burden of producing in turn evidence that would support a jury verdict." *Id.* at 256.

This Court "must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party." *Carraher*, 503 F.3d at 716. The nonmoving party, or party opposing a properly supported motion for summary judgment, "'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson,* 477 U.S. at 248 (quoting Fed.R.Civ.P. 56(e)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and . . . [the rule] should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp.*, 477 U.S. at 323–24. In this case, there is no genuine issue of material fact for trial because the Plaintiff did not present evidence from which a jury might return a verdict in its favor. *See Anderson,* 477 U.S. at 257.

## IV. DISCUSSION

### A. Choice-of-Law Analysis

An analysis of whether the Defendants' contractual limitations provisions apply to Weitz's claims, and whether Weitz's unjust enrichment claim is separate from Weitz's equitable subrogation claim, presents choice-of-law issues as to which of the following three states' laws apply: Illinois (location of the named insured's headquarters); Florida (location of the loss); or Iowa (location of Weitz's headquarters).

A court makes four analytical steps in resolving a choice-of-law issue: (1) characterize the nature of the cause of action; (2) decide if a conflict of law exists; (3) identify the law that applies based on the forum state's choice-of-law principles; and (4) determine which state's

substantive law applies based on the application of the forum state's choice-of-law principles. *See Jackson v. Travelers Insurance Co.*, 26 F. Supp.2d 1153, 1156-57 (S.D. Iowa 1998).

In deciding the choice-of-law questions presented here, this Court finds the following: (1) Weitz's claims are properly characterized as contract claims; (2) A "true conflict" exists between the laws of Florida and Iowa, and the laws of Illinois regarding whether an unjust enrichment claim is a separate cause of action, and whether contractual limitations clauses that shorten an applicable statutory limitations period are permissible; (3) Under the Iowa choice-of-law rules, the "most significant relationship" test of the Restatement (Second) Conflict of Laws § 188 is applicable, not §§ 145 or 193; and (4) In applying the factors set forth under § 188, Illinois substantive law applies.

## 1. Nature of the Claims

This Court's jurisdiction is based upon diversity jurisdiction; therefore, this Court must follow the choice-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *see also Colonial Ins. Co. of Cal. v. Spirco Envtl. Inc.*, 137 F.3d 560, 561 (8th Cir. 1998). In this case, the parties agree that Iowa's choice-of-law rules govern the Court's determination of the applicable substantive law because Iowa is the forum state. *See Carton v. General Motors Acceptance Corp.*, 639 F. Supp.2d 982, 987 (N.D. Iowa 2009) (citing *Alumbaugh v. Union Pac. R.R. Co.*, 322 F.3d 520, 523 (8th Cir. 2003)). The parties' agreement ends there.

The first step in determining a choice-of-law question is to properly characterize the type of case involved, and the law of the forum state controls this question. *See Drinkall v. Used Car Rentals, Inc.*, 32 F.3d 329, 331 (8th Cir. 1994) (quoting *O'Neal v. Kennamer*, 958 F.2d 1044, 1046 (11th Cir. 1992)). The "nature of the causes of action" must first be decided because "a state may have adopted different choice of law approaches depending on the nature of the claim." *Jackson*, 26 F. Supp.2d at 1156 (citing *Drinkall*, 32 F.3d at 331).

### a. Summary of the Arguments Regarding the Nature of the Claims

The first question in this case is whether equitable subrogation and unjust enrichment claims are properly characterized as tort or contract claims.

In their motion for summary judgment, Lexington/Allied contend that Weitz's equitable subrogation and unjust enrichment claims implicate Lexington/Allied's obligations under their property insurance contracts with Hyatt. Lexington/Allied argue that "[f]or choice of law

purposes these [Weitz's] claims most closely resemble contract claims." [Dkt. No. 148-1 Page 15.] This point was reiterated at the hearing on Defendants' motions for summary judgment in July of this year. [Dkt. No. 185 Page 81.] Lexington/Allied rely on *Duchardt v. Midland Nat'l Life Ins. Co.*, 265 F.R.D. 436, 446–48 (S.D. Iowa 2009), and *Dethmers Mfg. Co. v. Automatic Equipment, Mfg. Co.*, 23 F. Supp. 2d 974, 1001–04 (N.D. Iowa 1998), for the proposition that Iowa's contract choice-of-law principles apply here.

Weitz counters that it has a right to recover based on legally valid assignments to Weitz by its subcontractors and insurers. Weitz disagrees with Lexington/Allied that Weitz "stand[s] in Hyatt's shoes against [Lexington/Allied] as an insured" or it is a "contractual subrogee." [Dkt. No. 156 Page 8.] Rather, Weitz stresses that it brings claims for equitable—*not contractual*—subrogation and unjust enrichment. Since Weitz brings claims "solely in equity, not contract," it contends that Iowa's tort choice-of-law rules apply. [Dkt. No. 156 Pages 12–13.] According to Weitz, *Am. Online, Inc. v. National Health Care Discount, Inc.*, 121 F. Supp. 2d 1255 (N.D. Iowa 2000), is the most persuasive precedent, and any reliance on *Dethmers* is misplaced.

### b. Analysis of the Arguments Regarding the Nature of the Claims

This Court disagrees with Weitz's characterization of its claims. Under the laws of the forum state, Iowa, all of Weitz's claims are in contract.

On the one hand, it is true that "[t]he right of subrogation is not founded on contract." *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 136 n.12 (1962). Rather, subrogation is a "creature of equity." *Id.* It is formed independent of contractual relationships. *See Id.* On the other hand, the unjust enrichment and equitable subrogation claims Weitz brings against Lexington/Allied are based on insurance policies between Hyatt Corporation and Lexington/Allied. Therefore, Weitz's allegations against Lexington/Allied relate to contracts, not torts. *See Weitz Co. v. Lloyd's London*, No. 4:04–CV–90353–TJS, 2008 WL 7796651 (S.D. Iowa Mar. 31, 2008), *rev'd on other grounds,* 574 F.3d 885 (8th Cir. 2009) (finding that Weitz's claim for water damage against other insurers was based on policies of insurance, and therefore, was a contract claim); *see also Weitz Co. v. Travelers Cas. & Sur. Co. of Am.*, 266 F. Supp. 2d 984, 992 (S.D. Iowa 2003) (finding plaintiff's allegations related to contracts where plaintiff brought claims based on policies of insurance, and defendant denied coverage for a variety of reasons); *Grinnell Mut. Reinsurance Co. v. Jungling Jr.*, 654 N.W.2d 530, 536 (Iowa 2002) (indicating that "insurance policies are in the nature of adhesion contracts").

In addition, the case law relied upon by Weitz is distinguishable.  In *Am. Online, Inc.*, the court correctly applied Restatement (Second) § 145's tort choice-of-law principles because the claims at issue were properly characterized as tort claims.  121 F. Supp. 2d at 1269–70.  There, an Iowa corporation hired e-mailers to send unauthorized and unsolicited bulk e-mail advertisements to customers of AOL, an Internet Service Provider (ISP), in violation of state and federal laws.  *Id.* at 1270.  By relying on *Am. Online, Inc.*, Weitz incorrectly argues that Iowa's tort choice-of-law rules apply here.  In sum, if there is a "true conflict" between the laws of Florida, Illinois, and Iowa, this Court must apply Iowa's contract, not tort, choice-of-law rules.

## 2. Existence of Conflicts of Laws

The second step in determining a choice-of-law question requires the Court to decide if there is any conflict or difference between the state laws regarding the claims presented.  *See Jackson*, 26 F. Supp.2d at 1156–1157 (citing *Phillips v. Marist Soc'y*, 80 F.3d 274, 26 (8th Cir. 1996)).  "Before any choice of law need be made, there must be a 'true conflict' between the laws of the possible jurisdictions on the pertinent issue."  *Harlan Feeders, Inc. v. Grand Lab.*, 881 F. Supp. 1400, 1404 (N.D. Iowa 1995) (citing *Nesladek v. Ford Motor Co.*, 46 F.3d 734, 736 (8th Cir. 1995)).  Federal district courts in Iowa have used the term "conflict" or "difference" to indicate the situation where two or more laws are contradictory to each other.  *Jackson*, 26 F. Supp.2d at 1157.

For example, in *Harlan Feeders, Inc.*, the U.S. District Court for the Northern District of Iowa held that there was a "true conflict" between Nebraska's prohibition of punitive or exemplary damages by its Constitution, and Iowa's establishment by statute and common law of the availability and substantive requirements for punitive damages.  *Harlan Feeders, Inc.*, 881 F. Supp. at 1404–05.  The court concluded that there was a "true conflict" between the laws of Nebraska and Iowa regarding the right to seek punitive damages in a civil action.  *Id.*  The court reasoned that the availability of punitive damages was a question of "substantive law," rather than "procedural law."  *Id.*  at 1408.  Therefore, the court held that "punitive damages must be considered in this case in accordance with the substantive law of the state selected by application of Iowa's conflict-of-laws rules."  *Id.*

### a. Summary of the Arguments Regarding Unjust Enrichment Claims

At issue is whether a "true conflict" between the laws of Iowa, Florida, or Illinois exists. If no conflict or difference between the laws exists, then the law of the forum applies without a choice-of-law analysis being necessary.  *Phillips*, 80 F.3d at 276.

Lexington/Allied contend that differences exist between the states' laws relating to (1) if unjust enrichment is a separate cause of action, and (2) if contractual limitations clauses that shorten an applicable statutory limitations period are permissible.  [Dkt. No. 148-1 Pages 23, 31.] They cite *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010), and this Court's May 25, 2011 order denying Defendants' motions to dismiss for the proposition that Illinois does not recognize unjust enrichment as a separate cause of action.  [Dkt. No. 89.]  By contrast, Lexington/Allied assert that Florida and Iowa generally recognize a separate cause of action for unjust enrichment.  *See Moynet v. Courtois*, 8 So. 3d 377, 379 (Fla. Dist. Ct. App. 2009); *see also Iowa Waste Sys., Inc. v. Buchanan County*, 617 N.W. 2d 23, 29–31 (Iowa Ct. App. 2003).

Responding, Weitz disagrees with Lexington/Allied's characterization of the law. According to Weitz, no conflict of law exists to justify a choice-of-law analysis.  [Dkt. No. 156 Page 15.]  Weitz refers this Court to *Cleary v. Philip Morris Inc.*, 656 F.3d 511 (7th Cir. 2011), and *Control Solutions, LLC v. Oshkosh Corp.*, No. 10 C 121, 2012 WL 3096678 (N.D. Ill. July 27, 2012), contending that Illinois does recognize a stand-alone cause of action for unjust enrichment.

### b. Analysis of the Arguments Regarding Unjust Enrichment Claims

There is a difference between the laws of Illinois, and the laws of Florida and Iowa regarding unjust enrichment claims.  Under Illinois law, a claim for unjust enrichment is *not* a separate cause of action based on the facts confronting this Court.  *See Siegel*, 612 F.3d at 937.

Contrary to the arguments presented in Weitz's brief, the Seventh Circuit Court of Appeals in *Cleary* does not definitively resolve whether Illinois recognizes unjust enrichment as a separate cause of action.  *Cleary*, 656 F.3d at 518.  It is true that the Seventh Circuit in *Cleary* cites Illinois Supreme Court cases that recognize unjust enrichment as an independent cause of action, such as *Raintree Homes, Inc. v. Vill. of Long Grove*, 807 N.E.2d 439, 445 (Ill. 2004); *Peddinghaus v. Peddinghaus*, 692 N.E.2d 1221, 1225 (Ill. 1998); *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989); and *Indep. Voters v. Ill. Commerce Comm'n*, 510 N.E.2d 850, 852–58 (Ill. 1987).  However, Weitz overlooks the Seventh Circuit's

analysis of recent Illinois case law suggesting an opposite conclusion than the one Weitz puts

forth—that is, "an unjust enrichment claim cannot stand untethered from an underlying claim."

*Cleary*, 656 F.3d at 518.  At the hearing on Defendants' motions for summary judgment, Weitz

went so far as to argue:

> "[I]n *Cleary v. Philip Morris*, the [Seventh Circuit Court of Appeals] expressly addressed
> what the prior cases hadn't done, the question of does Illinois recognize a distinct cause
> of action for unjust enrichment, and after reviewing the Illinois cases and saying that it
> had located at least four Illinois Supreme Court cases, the Seventh Circuit said *it
> certainly appears to us that Illinois recognizes a standalone cause of action for unjust
> enrichment*" (emphasis added).

[Dkt. No. 185 Page 69.]  Weitz misstates *Cleary*.

After analyzing the conflicting case law on whether unjust enrichment is a separate cause

of action, the Seventh Circuit wrote, "Despite these reflections, it is not necessary to resolve

definitively whether Illinois law recognizes unjust enrichment as an independent cause of action:

the plaintiffs' case fails because their allegations are insufficient to support a cause of action for

unjust enrichment."  *Cleary*, 656 F.3d at 518.  More importantly, the Seventh Circuit's resolution

of the "apparently conflicting language" of Illinois state law on unjust enrichment claims bolsters

Lexington/Allied's contentions.  As Lexington/Allied note in their reply brief, *Cleary* stands for

the proposition that "if an unjust enrichment claim rests on the same improper conduct alleged in

another claim, then the unjust enrichment claim will be tied to this related claim—and, of course,

unjust enrichment will stand or fall with the related claim."  [Dkt. No. 164 Pages 10–11]; *Cleary*,

656 F.3d at 517 (citing *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th

Cir. 2007)).

Other Illinois case law—even precedent cited by Weitz—comes to the same conclusion

as the court in *Cleary*.  *See, e.g.*, *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v.

Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011) ("Under Illinois law, unjust enrichment is not a

separate cause of action. 'Rather, it is a condition that may be brought about by unlawful or

improper conduct as defined by law, such as fraud, duress, or undue influence, and may be

redressed by a cause of action based upon that improper conduct'"); *see also Control Solutions*,

2012 WL 3096678, at \*10 ("Thus, unjust enrichment may be asserted as a stand alone claim.

However, if the improper conduct that forms the basis of the unjust enrichment claim is the same

conduct forming the basis for another claim, then either both stand as alternative theories of

recovery or both fail"); *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1200 (Ill. App. Ct. 2008) ("[T]his court has held that [a claim for unjust enrichment] is not a separate cause of action that, standing alone, would justify an action for recovery. 'Rather, it is a condition that may be brought about by unlawful or improper conduct such as fraud, and may be redressed by a cause of action based upon that improper conduct'"). Thus, neither *Cleary* nor *Control Solutions*, stand for the proposition that Illinois recognizes a stand-alone cause of action for an unjust enrichment claim where, as here, an unjust enrichment claim and an equitable subrogation claim arise from the same conduct of the Defendants.

Furthermore, Lexington/Allied and Weitz refer this Court to its May 25, 2011 order, [Dkt No. 89 Page 17 n.10], denying Defendants' motions to dismiss in which this Court found that under Illinois law a claim for unjust enrichment is *not* a separate cause of action. [Dkt. No. 148-1 Page 23]; [Dkt. No. 156 Page 21.] However, in reaching that conclusion, this Court stated that "no conflict exists on the issue of unjust enrichment among the three states (Iowa, Illinois, and Florida) whose law potentially governs." [Dkt. No. 89 Page 17 n.10.] Based on this reasoning, the Court did not conduct a choice-of-law analysis. Upon further reflection, this Court is persuaded that it was wrong. Moreover, after review of the parties' briefs, and the case law referenced above, this Court finds that a "true conflict" exists because Illinois laws, and the laws of Florida and Iowa would provide conflicting results on whether unjust enrichment is a separate cause of action. *See Harlan Feeders, Inc.*, 881 F. Supp. at 1404.

### c. Summary of the Arguments Regarding Contractual Limitations Provisions

Lexington/Allied contend that Illinois recognizes and enforces contractual limitations provisions. [Dkt. No. 148-1 Page 30.] Lexington/Allied argue that Illinois courts have held that suits on insurance policies brought after expiration of such a contractual limitations period must be dismissed because compliance with the limitations period is a condition precedent to recovery. According to Lexington/Allied, Iowa also enforces these clauses if they are "reasonable in light of the contracts' provisions and the circumstances of their performance." [Dkt. No. 148-1 Page 31.] Conversely, Lexington/Allied argue that Florida does not permit contractual limitations clauses that shorten an applicable statutory limitations period. *See Scratch Golf, LLC. v. Lexington Ins. Co.*, No. 08-60815, 2009 WL 1287963, at *2–3 (S.D. Fla. May 6, 2009), *aff'd*, No. 09-13088, 2009 WL 4377556 (11th Cir. 2009).

Weitz asserts that the statute of limitations for a claim for equitable subrogation under Florida law is four years, and only begins to run once payment is made.  [Dkt. No. 156 Page 27]; *see also* FLA. STAT. ANN. § 95.11(3)(k) (West 2013); *Allstate Ins. Co. v. Metro. Dade County*, 436 So. 2d 976, 979 (Fla. Dist. Ct. App. 1983).  Weitz points to *Am. Alliance Ins. Co. v. IARW Ins. Co., Ltd.*, as the sole authority to suggest Illinois courts are "in accord" with Florida law. 165 F.3d 558, 561 (7th Cir. 1999).  Referring this Court to *Am. Alliance Ins. Co.*, Weitz argues that the Seventh Circuit applied Illinois law and held that "[a] period of limitations set by contract binds only the parties to the contract."  *Id*.  Thus, Weitz contends that its claims are not time barred under either Illinois or Florida law.

Weitz also distinguishes the cases relied upon by Lexington/Allied as contractual subrogation cases that are "inapplicable" in the context of a "purely equitable claim."  [Dkt. No. 156 Page 28.]  Weitz argues that the cases cited by Lexington/Allied are distinct because they involved direct actions by an insured against its insurer.  Weitz also cites Florida and Illinois case law that highlight the distinctions between causes of action for contractual subrogation and equitable subrogation.  *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Johnson*, 18 So. 3d 1099, 1100–1101 (Fla. Dist. Ct. App. 2009); *see also Electric Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 346 F. Supp. 2d 958, 964 (N.D. Ill. 2004).

### d. Analysis of the Arguments Regarding Contractual Limitations Provisions

There exists a conflict of laws over how contractual limitations provisions are treated. The Lexington/Allied policies state in relevant part: "No suit or action on this policy for the recovery of any claim shall be sustainable in a court of law or equity . . . unless commenced within twenty-four months next after inception of the loss."  [Dkt. No. 148-1 Page 29.]  The parties agree that, under Florida law, the contractual limitations provision would not bar Weitz's action if it shortened the applicable statutory limitations period for the claim.  [Dkt No. 148-1 Page 32]; [Dkt No. 156 Page 27.]

Whether Illinois's law would enforce the Lexington/Allied policies' limitation is at the center of the parties' disagreement.  This Court finds that Weitz's reliance on *Am. Alliance* is problematic.  In *Am. Alliance*, the Seventh Circuit held that a *contribution claim* was a direct claim, and the contractual limitations period did not apply to it.  Yet, the Seventh Circuit reasoned that a contractual limitations period would apply to a *subrogation claim*.  *See Am.*

*Alliance*, 165 F.3d at 560–61.  As Lexington/Allied correctly pointed out at the hearing on their motion for summary judgment:

> "Now, the [United States District Court for the Northern District of Illinois], just like the Seventh Circuit, contrasted [subrogation] with contribution and said contribution is distinct because under Illinois law that is a direct claim.  Weitz is not bringing a claim for contribution here, it is bringing a claim for subrogation and a claim for unjust enrichment that simply incorporates the allegations from its previous counts for equitable subrogation."

[Dkt. No. 185 Page 96.]  For that reason, Lexington/Allied's contractual limitations policy would be upheld under Illinois law.

Because this Court concludes there are conflicts of laws, it must next decide which state's substantive law applies to the controversies presented based on Iowa's choice-of-law principles.  *See Jackson*, 26 F. Supp.2d at 1159.  Once this Court determines which state's substantive law applies, it will determine whether Weitz can bring a separate unjust enrichment claim, and whether the two-year suit limitations period in Lexington/Allied's policies applies to Weitz's claims in equity.

### 3. Choice-of-Law Principles of the Forum State

The third step in determining a choice-of-law question requires the Court to "identify the applicable choice-of-law principles of the forum state, and finally, apply those principles to decide which state's law applies."  *Jackson*, 26 F. Supp.2d at 1157.  "The Iowa Supreme Court has repeatedly turned to the Restatement in analyzing the choice of law issues."  *Washburn v. Soper*, 319 F.3d 338, 342 (8th Cir. 2003).  It most recently considered choice-of-law issues in May of this year.  *See Moad v. Dakota Truck Underwriters*, 831 N.W.2d 111, 115 (Iowa 2013).

Because choice-of-law clauses express the intent of the parties to a contract, Iowa courts are generally deferential to such clauses.  *See Gabe's Constr. Co. v. United Capitol Ins. Co.*, 539 N.W.2d 144, 146 (Iowa 1995).  Nothing in the record indicates that there was a choice-of-law clause in the insurance policies negotiated between Hyatt and Lexington/Allied.

Where the parties to a contract have not specified which law governs, Iowa applies the law of the state with the "most significant relationship" or interests in the litigation, as determined by Restatement (Second) of Conflict of Laws § 188.  *See Aurora National Life Assurance Co.*, 462 F. Supp. 2d 951, 962 (S.D. Iowa 2006) (citing *Gabe's Constr. Co.*, 539 N.W.2d at 146); *see also Woods Masonry, Inc. v. Monumental Gen. Cas. Ins. Co.*, 198 F. Supp.

2d 1016, 1025 (N.D. Iowa 2002); *Cole v. State Auto & Cas. Underwriters*, 296 N.W.2d 779, 781 (Iowa 1980) (an insurance contract case in which Iowa adopted the "most significant relationship" test).

### a. Arguments Regarding Sections 145, 188, and 193

The parties disagree as to whether Restatement (Second) Conflict of Laws §§ 145, 188, or 193 should apply.  Weitz asserts that in applying the factors under Restatement (Second) Conflict of Laws § 145's tort choice-of-law test, Florida law controls.  [Dkt. No. 156 Page 13]; [Dkt. No. 185 Page 100.]  For the reasons stated above, this Court disagrees with Weitz that a torts choice-of-law test is appropriate.

In the alternative, Weitz argues that "[e]ven if the Court were to apply Iowa's contract rules to a choice-of-law analysis, Lexington/Allied apply the wrong test."  [Dkt. No. 156 Page 13.]  According to Weitz, § 193 of the Restatement, "Contracts of Fire, Surety or Casualty," provides that the law of the state where the risk is located governs when the contract is one of insurance, unless another state has a more significant relationship to the parties and the transaction.  [Dkt. No. 156 Page 14.]  Liability insurance is one of the various kinds of "casualty insurance."  *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193, cmt. a (1971); *see also Gabe's Constr. Co.*, 539 N.W.2d at 147.

Weitz urges the Court to adopt the site-specific choice-of-law test under Restatement (Second) Conflict of Laws § 193 for the insurance contracts between Hyatt and Lexington/Allied to determine whether Florida, Illinois, or Iowa law applies.  [Dkt. No. 156 Pages 13–14.]  Weitz attempts to bolster its claim that Florida law should apply by referring the Court to comment f of § 193.  Comment f addresses the situation of "multiple risk policies which insure against risks located in several states," and the comment suggests that if a house located in one state were damaged by a fire, then the local law of that state would apply "at least with respect to most issues."  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193, cmt. f (1971).

In its reply brief, Lexington/Allied cite *St. Paul Fire* and argue that § 193 of the Restatement does not apply here "because it pertains only to policies that are governed by state-specific statutory forms."  [Dkt. No. 164 Page 7]; *see also St. Paul Fire and Marine Ins. Co. v. Building Const. Enterprises, Inc.*, 526 F.3d 1166, 1168–69 (8th Cir. 2008).  Instead, Lexington/Allied argue that § 188, a general choice-of-law test for use when a contract contains no choice-of-law provision, should apply.  *St. Paul Fire*, 526 F.3d at 1168.

**b. Analysis of the Arguments Regarding Sections 145, 188, and 193**

The Court rejects Weitz's reliance on Restatement (Second) Conflict of Laws § 193 in support of its alternative argument that Florida law should apply. Section 193 is a specific choice-of-law provision that addresses "contracts of fire, surety or casualty insurance" and treats the principal location of the insured risk as the most important factor in the choice-of-law determination. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193 (1971).

In *St. Paul Fire*, § 193 was addressed in the context of multi-risk insurance policies where, as here, there is no principal location for the insured risk. *St. Paul Fire*, 526 F.3d at 1168–69. There, the Eighth Circuit Court of Appeals rejected the argument that Restatement (Second) of Conflict of Laws § 193 required the application of Kansas law, and held that Restatement § 188 required the application of Missouri law. *Id.* at 1169. The insurance contract dispute involved a claim for coverage of construction activity in Kansas. *Id.* However, the insurance policy was issued in Missouri, the insured was headquartered in Missouri, and the place of contracting for the purpose of entering into the insurance contracts was in Missouri. *Id.*

The court reasoned that "[w]ith multiple-risk insurance policies, there often will be no principal location for the insured risk. In such circumstances, the general, multi-factored test of § 188, rather than the site specific test of 193, typically controls." *Id.* at 1168–69 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193 cmt. a (1971) (stating that in cases where "there may be no principal location of the insured risk . . . the location of the risk can play little role in the determination of the applicable law. The law governing insurance contracts of this latter sort must be determined in accordance with the principles set forth in the rule of § 188"); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193 cmt. b (1971) (stating that situations where the risk cannot "be located, at least principally, in a single state . . . and where the location of the risk has less significance, include . . . where the policy covers a group of risks that are scattered throughout two or more states")). In reaching this conclusion, the Eighth Circuit explained that § 193, comment f, was not applicable because it pertained only to insurance policies that were governed by state-specific statutory forms. *Id.*

Weitz does not address *St. Paul Fire*, and its reliance on *Gabe's Construction Co.* is misplaced. [Dkt. No. 156 Page 14.] In *Gabe's Construction Co*., the Iowa Supreme Court relied upon § 193 to conclude that Iowa law should apply because the principal location of the insurer's risk was in Iowa. *Gabe's Constr. Co.*, 539 N.W. 2d at 146–47. There, liability arose from an

16

endorsement that named Gabe's Construction Co. as an additional insured. *Id.* at 147. The certificate of insurance was also specifically limited to coverage from liability arising from a project in Iowa. *Id.*

This case is markedly different than *Gabe's Construction Co.* Here, the insurance policies of Lexington/Allied and Hyatt were not specifically limited to coverage of one project in one state. Lexington/Allied's insurance policies do not cover Hyatt principally in Florida. Thus, § 193 loses its significance. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193 cmt. b (1971); *see also St. Paul Fire*, 526 F.3d at 1168–69.

As in *St. Paul Fire*, the Lexington/Allied insurance policies provided coverage to the real and personal property of Hyatt throughout the United States and Territories. [Dkt. No. 148-1 Page 16.] Weitz was also not named as an additional insured for purposes of any property located in Florida. [Dkt. No. 164 Pages 7–8.] Hence, because Iowa courts apply Restatement (Second) of Conflict of Laws § 188 in deciding choice-of-law questions in like circumstances, this Court must now apply the principles of § 188 to the present conflict to determine if Iowa's choice-of-law principles favor Illinois or Florida law on the facts before the Court. *See, e.g., Gabe's Constr. Co.*, 539 N.W.2d at 146; *see also Cole*, 296 N.W.2d at 781.

**4. Application of the Forum State's Choice-of-Law Principles**

This Court must take into account the contacts considered under Restatement (Second) of Conflict of Laws § 188(2), including: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

**a. Application of the Restatement (Second) Conflict of Laws Section 188 Factors**

A review of the record, and an examination of the specific factors set forth in the Restatement, shows that Illinois has significant contacts to the transaction or dispute and the parties. Illinois law applies to this dispute.

Regarding factor (a), comment e of § 188 of the Restatement indicates that "the place of contracting is the place where occurred the last act necessary, under the forum's rules of offer and acceptance, to give the contract binding effect, assuming, hypothetically, that the local law of the state where the act occurred rendered the contract binding." RESTATEMENT (SECOND)

CONFLICT OF LAWS § 188 cmt. e (1971); *see also White v. Farmers Insurance Exchange*, No. C96–1052, 1998 WL 34112764, at *4 (N.D. Iowa). Here, Hyatt (the named insured), Hyatt's insurance broker, and the Lexington/Allied underwriter for the insurance policies are all located in Illinois. [Dkt. No. 148-1 Page 16.] Moreover, Hyatt's principle place of business is in Chicago, Illinois. [Dkt. No. 185 Page 94.] The insurance policies were negotiated, written, and delivered in Illinois. Therefore, the relevant parties reside in Illinois, and the last act necessary to create the contract was presumably in Illinois.

As regards factor (b), the place of negotiation is where the parties negotiate and agree on the terms of their contract. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 cmt. e (1971). Here, Weitz does not dispute that the contract between Hyatt, Hyatt's insurance broker, and the Lexington/Allied underwriter for the insurance policies was negotiated in Illinois. [Dkt. No. 148-1 Page 16]; [Dkt. No. 156 Pages 13–14]; [Dkt. No. 185 Pages 99–100.]

With reference to factor (c), the place of performance in an insurance contract is "the place where premiums are paid, absent some provision in the policy to the contrary." *White*, 1998 WL 34112764, at 4* (citing *Hartford Accident & Indemnity Co. v. Cooper Park Dev. Corp.*, 169 F.2d 803 (3d Cir. 1948)). In this case, the record indicates that the Midwestern Risk Specialists collected the premiums on the policies in Illinois, and delivered the policies to Hyatt's broker in Illinois. [Dkt. No. 148-2 Page 8.] Moreover, as explained at the hearing on Defendants' motions for summary judgment, the premiums are paid in Chicago, Illinois. [Dkt. No. 185 Page 94.]

As to factor (d), the situs of the subject matter of the contract is the state or states where a thing or risk is located. The situses of the subject matter of the Defendants' policies are the United States and Territories where Hyatt's properties are located. [Dkt. No. 185 Page 94.] The policies insured risks in many states, and therefore, no single insured location, or state, is the subject matter of the policies. However, the Court agrees with Lexington/Allied because the strongest connection is to Illinois, where the underwriter, broker, and insured are all located. [Dkt. No. 148-1 Page 16.]

Concerning factor (e), all of the places considered under factor (e) are places of enduring relationships to the parties. In the case at bar, the broker, underwriter, and insured all have their principal places of business in Chicago, Illinois. The principal place of business of each of the relevant Hyatt entities is also in Illinois, and the policies provide an Illinois location for the

named insured.  [Dkt. No. 148-1 Page 16.]  After considering all the factors under § 188, this Court finds that Illinois has the most significant relationship with the transactions or dispute, parties, and contract involved.

This Court is unconvinced that the location of the underlying project, and the claimed damage in Florida outweigh the contacts with Illinois.  The location of where a risk subsequently manifests into a claim has little to do with the risk's principal location at the time the contract is entered into.  *See, e.g.*, *White*, 1998 WL 34112764, at *5-6 (finding that Colorado had the most significant relationship to the contract, even though the insured was injured in Iowa, and highlighting that the subject matter of the contract was located in Colorado at the time the insurance policy was purchased).  Here, Lexington/Allied were insuring against the risk of injury to Hyatt's real and personal property throughout the United States and Territories.  The principal location of the risk at the time of contracting was *not* Florida.  In fact, Weitz concedes the fact that "Lexington/Allied provided property insurance to Hyatt for numerous properties nationwide – covering hundreds of millions, if not billions, of dollars of construction and physical assets – on an annual basis."  [Dkt. No. 156 Page 24.]

Furthermore, Iowa courts place less weight on the location of an accident or claimed damage, and instead, rely on the place of contracting and the negotiation of the contract to determine choice-of-law questions.  *See Cole*, 296 N.W.2d at 782 (finding that under Iowa's choice-of-law rules, the most-significant relationship test favored the application of Minnesota law where the insurance policy was sold in a Minnesota transaction to a Minnesota resident by a Minnesota agent in order to establish an insurer-insured relationship in Minnesota, and although the case arose out of an accident that occurred in Minnesota, the court did not even consider the accident when identifying connections to Minnesota that required the application of Minnesota law under the Restatement).

Federal courts applying Iowa's choice-of-law principles are in line with Iowa's state courts' decisions.  *See, e.g.*, *Dethmers Mfg. Co.*, 23 F. Supp. 2d at 1004 (finding under Iowa choice-of-law rules that a claim for a breach of an alleged contract to keep an invention confidential was governed by the law of Nebraska, which barred punitive damages, rather than by the law of Iowa, California, or Nevada, as the defendant was a Nebraska corporation, and negotiations and performance occurred primarily in Nebraska, and negotiations only incidentally began in California and terminated in Nevada); *see also Woods Masonry, Inc.*, 198 F. Supp. 2d at

1021 (finding that in applying Iowa's "most significant relationship" test, even though the underlying accident occurred in Iowa, Arkansas had the most significant relationship because the policy at issue was formed in Arkansas, and the policyholder was domiciled in Arkansas); *Northwestern Flyers, Inc. v. Olson Bros. Mfg. Co., Inc.*, 679 F.2d 1264, 1272 (8th Cir. 1982) (finding that although a plane crash occurred in Montana, Nebraska had "the most significant relationship with the transaction in dispute and that Nebraska law should control any interpretation of the [insurance] policy provisions" as the parties entered into the insurance contract in Nebraska, and the insured was a Nebraska corporation).  For the foregoing reasons, this Court must decide the unjust enrichment and contractual limitation provision issues based on Illinois's substantive law.

**B. The Release, Suit Limitations, and Notice of Loss Provisions in the Defendants' Policies**

A federal court sitting in diversity must apply state substantive law and federal procedural law.  *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see also Hanna v. Plumer*, 380 U.S. 460, 465–66 (1965).  This Court interprets and applies Iowa's substantive law to the matters where there is not a conflict of laws, including the release and the notice-of-loss provisions in Lexington/Allied's insurance policies and Weitz's equitable subrogation claim. *See Weitz Co.*, 574 F.3d at 889–90; *see also Modern Equip. Co. v. Cont'l W. Ins. Co.*, 355 F.3d 1125, 1128 n.7 (8th Cir. 2004) ("If there is not a true conflict between the laws . . . on the pertinent issue, then no choice-of-law is required").  As discussed above, this Court applies Illinois's substantive law to the suit limitations provisions and unjust enrichment issues.  *See Am. Alliance*, 165 F.3d at 560–61; *see also Siegel*, 612 F.3d at 937.

Initially this Court addresses the release Hyatt gave Lexington/Allied in November 2005. Then it considers the effect of the Defendants' suit limitations and notice-of-loss provisions in their insurance policies.  Any claim, security, or remedy that the subrogee, Weitz, acquires from the subrogor, Hyatt, "is taken subject to the limitations, burdens and disqualifications incident to them in the hands of the party to whom the subrogee is subrogated."  *Central Nat'l Ins. Co. v. Insurance Co. of N. Am.*, 522 N.W.2d 39, 44 (Iowa 1994).  "[S]uch claim, security, and remedy are subject to any defenses that might have been urged against the party to whom the subrogee is subrogated."  *Id.*; *see also Wilson v. Farm Bureau Mut. Ins. Co.*, 770 N.W.2d 324, 328 (Iowa 2009) (finding that a subrogee's rights are "subject to all defenses the [third party] could assert against the [subrogor]"); *Allied Mut. Ins. Co. v. Heiken*, 675 N.W.2d 820, 825 (Iowa 2004).

Therefore, in bringing an equitable subrogation claim, Weitz is subject to all the conditions, limitations, and defenses that would have applied to a claim by Hyatt against the Defendants. Weitz is not safeguarded from the defenses and limitations in Defendants' insurance policies because Weitz is proceeding in equity.

Next, Weitz's underlying equitable subrogation claim is reviewed along with its claim for an unpaid contract balance totaling $4,963,404.18 allegedly owed by Lexington/Allied.  Finally, in applying Illinois law, this Court finds that because Weitz's equitable subrogation claim fails as matter of law, its unjust enrichment claim also fails as a matter of law.  For these reasons, this Court grants Defendants' motions for summary judgment on all of Weitz's claims.

**1. Legal Standards**

The construction of an unambiguous release or settlement agreement is a question of law, which this Court may determine without the intervention of a jury.  *See PMX Industries, Inc. v. LEP Profit International*, 31 F.3d 701, 703 (8th Cir. 1994) (applying Iowa law and finding summary judgment appropriate where a release was unambiguous); *see also Builders Kitchen and Supply Co. v. Moyer*, 776 N.W.2d 112, *2 (Iowa App. 2009) (unpublished table decision) (citing *Daggett v. Nebraska-Eastern Express, Inc.*, 107 N.W. 2d 102, 108 (Iowa 1961)).

The construction of the provisions of an insurance policy, such as suit limitations provisions, is a question of law.  *See Outboard Marine Corp. v. Liberty Mutual Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992); *see also Hoover v. Country Mut. Ins. Co.*, 975 N.E.2d 638, 646 (Ill. App. Ct. 2012).  Even though wavier of a suit limitations period and estoppel are normally questions for the trier of fact, *Lee v. Ohio Casualty Ins. Co.*, 373 N.E.2d 1027, 1031 (Ill. App. Ct. 1978), it does not mean that summary judgment is never appropriate.  *See Florsheim v. Travelers Indemnity Co.*, 393 N.E.2d 1223, 1228 (Ill. App. Ct. 1979) (citing *Doll v. Farmers Automobile Ins. Association*, 370 N.E.2d 258, 261 (Ill. App. Ct. 1977).

 The timeliness of notification to the insurer is ordinarily a question of fact.  *See Grinnell Mut. Reins. Co.,* 654 N.W.2d at 542.  However, when the insured has unreasonably and inexcusably delayed in providing notice, the notice can be untimely as a matter of law.  *See A.Y. McDonalds Indus., Inc. v. Insurance Co. of N. Am.*, 842 F. Supp. 1166, 1177 (N.D. Iowa 1994), *aff'd*, 48 F.3d 1223 (8th Cir. 1995) (unpublished table decision).

**2. The Release and the 2004 Damage to the Care Center**

Under Iowa law, "[a] release or settlement agreement is a contract, and is construed under the legal principles applicable to the construction and interpretation of contracts." *PMX Industries, Inc.*, 31 F.3d at 703 (applying Iowa law and affirming summary judgment based on a general release) (citing *Amana Refrigeration v. Pidgeon's Furniture & Appliance Stores Inc.*, 883 F.2d 657, 658 (8th Cir. 1989)). Iowa's Supreme Court has explained that it "interpret[s] settlement agreements according to the intent of the parties as determined by the terms of the release." *State v. Klawonn*, 688 N.W.2d 271, 275 (Iowa 2004) (citing *Waits v. United Fire & Cas. Co.*, 572 N.W.2d 565, 572 (Iowa 1997)). There is no requirement that each promise in an agreement containing multiple promises is to be supported by separate consideration. *See PMX Industries, Inc.*, 31 F.3d at 704 (citing *Matter of Estate of Claussen*, 482 N.W.2d 381, 383 (Iowa 1992)). The forbearance to press a claim, or a promise of such forbearance, constitutes sufficient consideration if the claimant is asserting the claim in good faith. *See Dyer v. National By-Products, Inc.*, 380 N.W.2d 732, 734 (Iowa 1986).

**a. Summary of the Arguments Regarding the Release**

This Court next addresses whether enforcing a November 2005 settlement agreement between Lexington/Allied and Hyatt (which precludes Weitz from pursuing a claim against Lexington/Allied) is inequitable.

Lexington/Allied contend that Weitz's care center claim fails as a matter of law because Hyatt gave Lexington/Allied a release in 2005 which bars Weitz's claim as to the 2004 care center damage. [Dkt. No. 148-1 Page 25.] Because Hyatt discharged Lexington/Allied from future liability in 2005, Lexington/Allied argue, Hyatt does not have an insurance claim under the Lexington/Allied insurance policies for the care center. Therefore, Weitz's derivative claim is barred because of this settlement agreement. [Dkt. No. 148-1 Pages 28–29.]

In reply, Weitz argues that Lexington/Allied "coerc[ed] a minimal settlement [with Hyatt] and forc[ed] the pursuit of claims against Weitz [by Hyatt] instead." [Dkt. No. 156 Page 26.] According to Weitz, the agreement between Lexington/Allied and Hyatt for $750,000 did not reflect the actual damage to the care center, which Weitz alleges was $11.5 million. Weitz further contends that the November 2005 agreement cannot bar Weitz's care center claim because Weitz brings a claim "in equity" for damages that should have been recovered under the Lexington/Allied insurance policies originally. Weitz makes the argument that enforcing the

November agreement between Lexington/Allied and Hyatt "would be inequitable . . . and a violation of public policy."  [Dkt. No. 156 Page 26.]

### b. Analysis of the Arguments Regarding the Release

The general release that was negotiated between Hyatt and Lexington/Allied on November 2, 2005 states that Lexington/Allied is released from further liability for "any and all claims, demands [or] actions . . . arising from any act or occurrence" up to the November 2, 2005 release date.  [Dkt. No. 148-1 Page 27.]   As Lexington/Allied note in their brief, "Hyatt also specifically settled and gave the insurers a release for 'property damage, loss or other damages of *any kind* sustained or that [Hyatt] may hereinafter sustain as a consequence of the claims submitted under [Lexington Policy No.] 1282118 and [Allied World Policy No.] AW1282118 and assigned Claim Nos. 030-175065 and 648-00632,' and released Lexington/Allied from any further liability with respect to that specific Care Center claim."  [Dkt. No. 148-1 Page 27.] (emphasis added).

Weitz's arguments are without merit.  The plain language of the release that was signed by Hyatt in 2005 indicates that any claims against Lexington/Allied are not cognizable.  The releases that Lexington/Allied secured were general releases.  *See PMX Industries, Inc.*, 31 F.3d at 703.  There was also sufficient consideration for the settlement agreement because Hyatt received $750,000 from Lexington/Allied in exchange for Hyatt's promise to forbear pressing any claims against Lexington/Allied.  *See Dyer*, 380 N.W.2d at 734.  There is no indication from the record that Lexington/Allied secured the releases through "unethical behavior," "strong-arming," or by threats not to renew Hyatt's insurance program, or that Lexington/Allied "foisted [ ] liability on Weitz."  [Dkt. No. 156 Pages 22, 24–25.]

Indeed, Weitz puts forth scant evidence to support the claim that Lexington/Allied acted "unethically."  The fact that Lexington's Senior Claim Examiners "conceded that he had never before seen (and would not personally condone)" Lexington/Allied linking their insurance renewal offer with their settlement offer to Hyatt proves little.  [Dkt. No. 156 Page 24.] Sophisticated counsel represented Hyatt and Lexington/Allied.  The parties had sufficiently equal bargaining power, and there is no evidence that Hyatt was coerced into making an agreement with Lexington/Allied.  This Court is aware of the fact that insurance companies often face the same "threats" from owners of businesses or companies who shop around for new insurance companies at the time for renewal.  [Dkt. No. 185 Page 60.]  Hence, the evidence is not such that

a reasonable jury could find that Hyatt entered the 2005 settlement agreement because Lexington/Allied coerced Hyatt.  Rather, as Lexington/Allied assert, "[T]here is no evidence showing that this settlement [between Lexington/Allied and Hyatt] was anything other than a voluntary, binding negotiation and compromise."  [Dkt. No. 164 Page 12.]

Because Weitz is asserting a right of equitable subrogation through its alleged subrogor, Hyatt, it can enforce only the rights that Hyatt could enforce directly.  *See United States v. United Services Auto Ass'n*, 238 F.2d 364, 366 (8th Cir. 1956) (quoting *United States v. Munsey Trust Co.*, 332 U.S. 234, 242 (1947)) ("The subrogee stands in the place of one whose claim he has paid,  'It is elementary that one cannot acquire by subrogation what another whose rights he claims did not have.'  A [subrogee] can take nothing by subrogation except such rights as the [subrogor] had"); *see also Grinnell Mut. Reinsurance Co. v. Recker*, 561 N.W.2d 63, 69 (Iowa 1997).  Hyatt settled "*any kind*" of claim against Lexington/Allied and released Lexington/Allied from liability regarding the care center property.  Therefore, Weitz is barred from making any claims with regards to damage to the care center in 2004.

### 3. Contractual Limitations Provisions and the Damage to the Care Center and Towers

Illinois case law establishes that insurance policies may validly set forth contractual limitations requiring suit to be brought within a specified period of time.  *See Florsheim*, 393 N.E.2d at 1228.  For instance, it has been held that insurance contracts may validly provide for a one-year or two-year limitations period within which to bring suit thereon against an insurer.  *See Lauren Rein v. State Farm Mutual Automobile Ins. Co.*, 945 N.E.2d 94, 97 (Ill. App. Ct. 2011) (two-year limitations period); *see also Garcia v. Metropolitan Property and Cas. Ins. Co.*, 666 N.E.2d 802, 803 (Ill. App. Ct. 1996) (one-year limitations period).

Compliance with the contractual limitations provisions is a condition precedent to recovery under a policy of insurance.  *See Hoover*, 975 N.E.2d at 646; *see also Cramer v. Insurance Exchange Agency*, 675 N.E.2d 897, 906 (1996); *Foamcraft, Inc. v. First State Ins. Co.*, 606 N.E.2d 537, 539 (1992).  The Illinois Supreme Court has noted that there are "strong reasons" to impose suit limitation provisions because of the great difficulty in investigating and preparing a defense for losses following a great lapse of time.  *See Peoria Marine & Fire Ins. Co. v. Whitehill*, 25 Ill. 466, *7 (Ill. 1861).  Absent a statute to the contrary, contractual limitations provisions are as a general rule enforceable.  *See also Affiliated FM Ins. Co. v. Board of Educ. of City of Chicago*, 23 F.3d 1261, 1264 (7th Cir. 1994) (applying Illinois law).  "A

limitation period is enforceable even though the claim was meritorious and the insurer should have paid it; unless the insurer because of its conduct waives or is estopped from relying on the bar." *Florsheim*, 393 N.E.2d at 1229.

### a. Summary of the Arguments Regarding the Suit Limitations Provisions

The controversy here concerns the enforceability of suit limitations provisions in Defendants' insurance policies that require the insured to bring suit within one or two years.

Lexington/Allied argue that the contractual limitations provision in their insurance policies required Hyatt (or Weitz, as Hyatt's subrogee) to bring suit against Lexington/Allied regarding the care center within twenty-four months of putting Lexington/Allied on notice of the September 27, 2004 damage.  Thus, as Lexington/Allied point out, Hyatt had no later than October 1, 2006 to put Lexington/Allied on notice.  [Dkt. No. 148-1 Page 29.]  Weitz did not commence this lawsuit until June 2010, which is five years and nine months after the damage to the care center occurred.  [Dkt. No. 148-1 Page 30.]

In addition, although Lexington/Allied dispute that the damage to the towers occurred in or about July 2005, as Weitz alleges, Lexington/Allied argue that Weitz's towers claim still falls outside the contractual limitations period.  This is because, even if this Court assumes that the damage occurred in July 2005, this action did not arise until four years and eleven months after the damage to the towers occurred.  [Dkt. No. 148-1 Page 30.]

In response, Weitz presents a two-fold argument.  First, Weitz alleges that in equity it is not subject to Lexington/Allied's contractual limitations provision.  [Dkt. No. 156 Pages 27, 29.]  Second, even if this Court analyzes Weitz's claims in relation to Hyatt's rights against Lexington/Allied, Hyatt's claims were still viable at the time Weitz filed the present action.  [Dkt. No. 156 Page 27.]

Alternatively, Weitz contends that even if this Court finds that the suit limitations provision is valid, Lexington/Allied have not demonstrated an entitlement to enforce it.  "By Lexington's own express admission, the Towers claim remained 'open' and was being adjusted by Lexington/Allied, through early 2010, when Weitz paid the claim instead."  [Dkt. No. 156 Page 29.]  Weitz argues that its payment to Hyatt benefited Lexington/Allied as evidenced by the subsequent closure of Lexington/Allied's claim.  Weitz contends, without citing any supporting case law, that Lexington/Allied "waived" their right to a "limitations defense" as they did not

"note, or ever reserve the right to assert" the defense while the towers claim was open.  [Dkt. No. 156 Page 29.]  This Court disagrees.

### b. Analysis of the Arguments Regarding the Suit Limitations Provisions

A contractual limitations policy that is applicable to a subrogor also applies to the subrogee.  *See, e.g.*, *Am. Alliance Ins.*, 165 F.3d at 561; *see also Illinois Farmers Ins. Co. v. Makovsky*, 689 N.E.2d 618, 622 (Ill. App. Ct. 1997).  "One who asserts a right of subrogation must step into the shoes of, or be substituted for the one whose claim or debt he has paid and can only enforce those rights which the latter could enforce."  *Illinois Farmers Ins. Co.*, 689 N.E.2d at 622.  As the subrogee of Hyatt in this action, Weitz is likewise bound by any limitations period in the insurance policy.  Thus, if the limitations period is found to have expired prior to the filing of Weitz's complaint in this case, Weitz cannot recover for the damage to the care center or towers.  *See Florsheim*, 393 N.E.2d at 1231 (citing *Doll*, 370 N.E.2d at 261); *see also Salloum Foods & Liquor, Inc. v. Parliament Ins. Co.*, 388 N.E.2d 23, 28 (Ill. App. Ct. 1979).

The relevant Lexington/Allied policy provides: "No suit or action on this policy for the recovery of any claim shall be sustainable in a court of law or equity . . . *unless commenced within twenty-four months next after inception of the loss*."  [Dkt. No. 148-1 Page 29.] (emphasis added).[12]  Taking "inception of the loss" in its most favorable interpretation for Weitz,[13] this suit was not brought within the twenty-four month period of limitations under the policies of

---

[12] Lloyd's Underwriters' Policy 04RSOM1143 follows the primary insurance policy's form issued by Lexington "as to the two-year suit limitation clause contained in the Lexington and Allied Policies." [Dkt. No. 152-1 Page 2.]  Additionally, Essex Policy ESP2672 follows the form of the primary insurance policy issued by Lexington, but it "contained its own suit limitation provision, which required that an action be brought within one year of the physical damage."  [Dkt. No. 152-1 Page 3.]  Westchester's Policy D35877514 002 contains a two-year suit limitation clause.  [Dkt. No. 153-1 Page 5.]  Therefore, Weitz's claims against the Defendant insurers that were filed in June of 2010 regarding damage that occurred to the towers in July of 2005 are barred by the individual suit limitations clauses in the Defendants' insurance policies.

Westchester also argues that, even if Weitz had a viable claim, the damages alleged by Weitz that are associated with the towers do not reach Westchester's $40 million insurance layer. [Dkt. No. 153-1 Pages 8–9.]  Because this Court finds that Westchester's suit limitations policy bars Weitz's claim, this Court need not decide whether Westchester's insurance layer of $40 million was implicated by the damage to the towers.

[13] "Inception of loss" means the date the loss occurred, not the date that the insured discovered the loss.  *See Sager Glove Corp. v. Aetna Ins. Co.*, 317 F.2d 439, 441 (7th Cir. 1963), *cert. denied*, 375 U.S. 921; *see also Naughten v. Maryland Casualty Co.*, 197 N.E.2d 489, 491 (Ill. App. Ct. 1964).

Lexington/Allied.  It was also not brought within the twenty-four month period of limitations under the policies of Lloyd's Underwriters and Westchester, or the twelve-month period of limitations under Essex's insurance policy.

The record reveals that Weitz waited five years and nine months to sue on the damage to the care center, and four years and eleven months to sue on the damage to the towers.  (L/A MSJ 21).  Weitz's claims were untimely.  Even if Hyatt had not released Lexington/Allied from further liability regarding the damage to the care center, Weitz's claim regarding the care center is barred because of the suit limitations provision in the Defendants' insurance policies.

Further, Weitz does not put forth any evidence that suggests the Defendants did not intend to rely on the requirements of their insurance policies.  "A waiver is an intentional relinquishment of a known right."  *Florsheim*, 393 N.E.2d at 1229.  To constitute a waiver, the words or conduct of the insurer must have been inconsistent with its intention to rely on the requirements of the policy.  *Id.*  A waiver may also be implied from the insurer's conduct. *Sager*, 317 F.2d at 442.  Nothing in the record indicates that the Defendant insurers implicitly or intentionally waived their limitations period for bringing suit.

The strongest argument made by Weitz is that the Defendant insurers' investigation into the damage to the towers constituted a waiver of their suit limitations requirements.  Yet, the Seventh Circuit Court of Appeals, applying Illinois law, has held that "[d]efendants' investigation of the claimed loss did not bring its conduct within the scope of the rule of implied waiver exemplified by the Illinois authorities."  *See Sager*, 317 F.2d at 442.  The Defendant insurers have never changed their position that they were not liable for the loss.  No negotiation in furtherance of a settlement agreement ever took place between Weitz and the Defendants.  All Weitz alleges is that Lexington/Allied did not "close" their towers claim until Weitz agreed to make its settlement payment to Hyatt.  [Dkt. No. 156 Page 27.]  Accordingly, there was no waiver of the Defendants' suit limitations requirements.

Nor does Weitz suggest that Lexington/Allied should be estopped from enforcing the suit limitations provision.  Conduct is typically found to amount to estoppel where there is a concession of liability by the insurer, advance payments by the insurer to the insured in contemplation of eventual settlement, and statements by the insurer which encouraged the insured to delay filing his action.  *See Garcia*, 666 N.E.2d at 805.  In this case, Weitz does not offer evidence that the Defendants conceded liability, the Defendants provided advance payment

to Weitz in contemplation of settlement, or the Defendants made statements encouraging Weitz to delay filing a lawsuit. Because Weitz did not comply with the Defendants' insurance policy provisions, Weitz's claims regarding the alleged damage to the care center in 2004 and the alleged damage to the towers in 2005 are barred.

**4. Notice of Loss and the Damage to the Plaza Deck**

"When, as here, a notice provision is written as a condition precedent to policy coverage, the insured must show substantial compliance with the condition." *Grinnell Mut. Reinsurance Co.*, 654 N.W.2d at 542 (citing *Met-Coil Systems Corp. v. Columbia Cas. Co.*, 524 N.W.2d 650, 654 (Iowa 1994)). Iowa's Supreme Court has held notice given to the insurer must be express and direct; constructive notice from insurers' yearly inspections is insufficient. *See Fireman's Fund Ins. Co. v. ACC Chemical Co.*, 538 N.W.2d 259, 263 (Iowa 1995). "Unless given notice within a reasonable time, evidence could be lost and key witnesses never discovered." *Henderson v. Hawkeye-Security Ins. Co.*, 106 N.W.2d 86, 92, 107 (Iowa 1960). "The insured bears the burden of proof on notice." *See Fireman's Fund Ins. Co.*, 538 N.W.2d at 262.

**a. Summary of the Arguments Regarding Notice**

The question here is whether Weitz gave, or was excused from giving, notice to the Defendants regarding the damage to the plaza deck in 2008 before Weitz brought the present claims against the Defendants in equity. Weitz concedes that Allied World is not liable for the 2008 damage to the plaza deck. [Dkt. No. 156 Page 30 n.10.]

For purposes of their summary judgment motion, Lexington assumes that the damage to the plaza deck was evident by May 2008 as Weitz alleges. [Dkt. No. 156 Page 27.] The exact date of the damage, however, is disputed. Lexington argues that it never received direct notice from Hyatt or Weitz about the damage, and consequently, Hyatt is barred from suing Lexington on this claim.[14] *See MetCoil Sys. Corp.*, 524 N.W.2d at 655. Thus, Lexington argues, Weitz's present claim that is derivative of Hyatt's rights is barred. [Dkt. No. 148-1 Page 35.]

Weitz acknowledges that it did not directly notify the insurers for five years after the damage to the plaza deck occurred. However, Weitz argues that the documents Lexington

---

[14] Essex and Lloyd's Underwriters also maintain that they did not receive notice of the damage to the towers. [Dkt. No. 168 Page 3.] Essex and Lloyd's Underwriters contend that Weitz's argument that the towers claim was "open," "adjusted," and "monitored" by Essex and Lloyd's Underwriters is false, and "Weitz fails to differentiate between the actions of Lexington/Allied and those of Essex and Lloyd's Underwriters." [Dkt. No. 168 Page 3.]

"produced show that it did receive notice of [the 2008 plaza deck] damage." [Dkt. No. 156 Page 30.]  Moreover, Lexington had "actual 'notice' of the Plaza Deck damage." [Dkt. No. 156 Page 30.]  This is because Lexington was "monitoring" the litigation between Hyatt and Weitz. Lexington also produced a "Southern District Litigation file" in discovery that included copies of Hyatt's expert's confidential damages reports, which detailed the 2008 plaza deck damage. Weitz reiterates to this Court that it is "here in equity."  Weitz argues that fairness and equity require Lexington/Allied to "reimburse Weitz for damages they were obligated to pay in the first instance [to Hyatt]." [Dkt. No. 156 Page 31.]

### b. Analysis of the Arguments Regarding Notice

The notice provision in Lexington/Allied's insurance policies was included in the "Manuscript All Risk Form" under the subpart captioned: "23. Notice of Loss": "The Insured shall, as soon as practicable, report to this Company or its agent every loss, damage or occurrence that may give rise to a claim under this policy." [Dkt. No. 148-7 Page 57.]  The giving of the notice was a condition precedent to Lexington's liability.  The 2007-2008 Lexington policy provides: "All adjusted claims shall be due and payable thirty (30) days after the presentation and acceptance of satisfactory proof(s) of loss at the office of the Company." [Dkt. No. 164 Page 14.]

Unless the insured meets the burden of showing: (1) substantial compliance with the "notice-of-loss" provision in the insurer's insurance policies, or (2) excuse from compliance, or (3) waiver of requirement, or (4) lack of prejudice to the insurer, prejudice to the insurer must be presumed.  *See Fireman's Fund Ins. Co.*, 538 N.W.2d at 262; *see also Met-Coil Systems Corp.*, 524 N.W.2d at 654 (citing *Am. Guar. & Liab. Ins. Co. v. Chandler Mfg. Co.*, 467 N.W.2d 226, 228 (Iowa 1991)).  "Although this presumption of prejudice is rebuttable, unless it is overcome by a satisfactory showing of lack of prejudice, it will defeat the insured's recovery."  *Met-Coil Systems Corp.*, 524 N.W.2d at 654 (citing *Henschel v. Hawkeye-Security Ins. Co.*, 178 N.W.2d 409, 415 (Iowa 1970); *Henderson*, 106 N.W.2d at 107).  Weitz did not attempt to show that Lexington waived the notice requirement.  That issue is not addressed.  Based on the other elements, this Court finds Weitz fails to meet its burden as a matter of law and cannot recover.

First, regarding the "substantial compliance" issue, this Court must interpret the phrase "as soon as practicable" from Lexington/Allied's insurance policy.  Iowa courts are in agreement that "as soon as practicable" means "within a reasonable time in light of the circumstances." *See*

*Henschel*, 178 N.W.2d at 415 (citing *Leytem v. Fireman's Fund Indemnity Co.*, 85 N.W.2d 921, 922 (Iowa 1957)).  Shorter delays between an accident or property damage and notice to the insurer were held as a matter of law not to be in substantial compliance with notice provisions of "as soon as practicable" or "as soon as possible."  *See Bruns v. Hartford Accident and Indemnity Co.*, 407 N.W.2d 576, 579–80 (Iowa 1987) (finding twenty-eight-month delay in notice by insured was not in substantial compliance with giving notice "as soon as possible"); *see also Henderson*, 106 N.W.2d at 92 (finding thirteen-month delay in notice by insured was not in substantial compliance with giving notice "as soon as practicable"); *see also Fireman's Fund Ins. Co.*, 538 N.W.2d at 264–65 (citing cases involving ten-month, four-year, and seven-month delays in notice that precluded coverage as matters of law).

A review of the record reveals that Hyatt never informed Lexington of the damage to the plaza deck.  Lexington does not appear to be notified of the loss until this case was filed on June 4, 2010, which was more than two years after the date of loss alleged by Weitz of May 2008.  In addition, Hyatt never gave notice to Lexington of the alleged plaza deck damage. [Dkt. No. 148-1 Page 34.]  In fact, Hyatt's Risk Manager conceded that Hyatt never gave formal notice of the plaza deck damage to Lexington, and a representative of Lexington indicated that it did not appear Lexington nor Allied World received formal or informal notice of damage to the plaza deck. [Dkt. No. 156 Page 30.]  Weitz also acknowledges that it did not directly notify Lexington, or one of its agents, of the damage to the plaza deck that occurred in 2008.  Rather, Weitz asserts that Lexington had notice based on Lexington's monitoring of the dispute between Hyatt and Weitz. [Dkt. No. 156 Page 30.]  This Court rejects that argument.

Weitz's argument fails as a matter of law because Lexington never received direct notice from Hyatt or Weitz in accordance with Lexington/Allied's policies.  *See Fireman's Fund Ins. Co.*, 538 N.W.2d at 263 (citing *Am. Casualty Co. v. FDIC*, 944 F.2d 455, 460 (8th Cir. 1993) (notice must be specific and in writing)); *see also Hasbrouch v. St. Paul Fire & Marine Ins. Co.*, 511 N.W.2d 364, 369–70 (Iowa 1993) (constructive notice to insurer insufficient; policy "contemplates that the insured will report to the insurer any claims allegedly covered by the policy").  This Court finds a lack of substantial compliance with the notice provision in Lexington/Allied's insurance policies.  Weitz's delay was a breach of the condition precedent to recovery.  *See Henderson*, 106 N.W.2d at 107.

Second, the next issue is whether substantial compliance was excused.  If a claimant fails to meet its burden of proof of substantial compliance with a notice provision, the claimant may still recover if it can demonstrate such noncompliance was excused.  *See Met-Coil Systems Corp.*, 524 N.W.2d at 656 (citing *Bruns*, 407 N.W.2d at 579).  Iowa's Supreme Court has held that an insured's mistaken belief or lack of knowledge regarding coverage may be a justifiable excuse for noncompliance with an insurance policy's notice provision if the insured exercised due diligence by not acting negligently and made a "reasonable effort to discover the existence of coverage."  *Grinnell Mut. Reinsurance Co.*, 654 N.W.2d at 542 (citing *Met-Coil Systems Corp.*, 524 N.W.2d at 654).

In this case, Weitz has not offered any excuses for its failure to comply with the notice provisions contained in Lexington/Allied's insurance policies.  It also does not appear that Weitz made a "reasonable effort" to determine the existence of coverage, as the only evidence in the record of such a request is when Weitz sued Lexington/Allied after Hyatt brought suit against Weitz and Weitz settled with Hyatt.

Finally, the question that remains is whether the insurance company, Lexington, was prejudiced.  An insured's substantial breach of a condition precedent, which is not excused or waived, must be presumed prejudicial to the insurer.  *See Met-Coil Systems Corp.*, 524 N.W.2d at 658; *see also Henderson*, 106 N.W.2d at 106–07.  "Although the presumption is rebuttable, unless overcome by a satisfactory showing of lack of prejudice by the claimant, it will defeat his recovery."  *Henderson*, 106 N.W.2d at 107.

This Court concludes that Weitz failed to show a lack of prejudice as a matter of law, and thus, did not meet its burden.  *See Met-Coil Systems Corp.*, 524 N.W.2d at 658.  The Iowa Supreme Court has recognized how a party may be prejudiced with late notice:

> "In this case, five years had passed since the occurrence.  The appearance of the site had been changed.  At least one key witness had died, many had left, and many relevant documents had been destroyed.  The witnesses who were available could not reasonably be expected to fully recall the events of five years earlier.  These insurers were deprived of any opportunity to negotiate with the EPA or provide any input, except their money, on their consent decree.  Chemplex had already spent millions on remediation and had obligated itself to spend millions more before it notified these insurers that they were expected to pay these expenses."

*Fireman's Fund Ins. Co.*, 538 N.W.2d at 266.

In this case, evidence of prejudice includes the fact that because Hyatt never gave the required notice of any plaza deck damage, Lexington was denied the chance to respond.  As a consequence, Lexington did not have the opportunity to negotiate with Hyatt regarding the damage to the plaza deck.  Hyatt is barred from suing Lexington/Allied for the alleged damage, and thus, it is prejudicial to allow Weitz, as Hyatt's subrogee, to sue Lexington/Allied at this late date.  [Dkt. No. 148-1 Pages 34–35.]  Moreover, two years and one month passed after the damage to the plaza deck allegedly occurred and Weitz filed suit.  It has now been five years and five months since the damage to the plaza deck occurred.  The fact that Lexington monitored the litigation between Hyatt and Weitz cannot rise to the level of notice that Lexington received direct notice, or that Lexington conducted an extensive investigation of the damage to the plaza deck.  Hence, the presumption of prejudice to Lexington was not overcome.  Thus, Weitz is barred from suing the Defendants for the alleged damage to the plaza deck in 2008.

## C. Equitable Subrogation and Unjust Enrichment

## 1. Equitable Subrogation

The United States Supreme Court has explained that, under the doctrine of subrogation, "one who has been compelled to pay a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other." *Am. Sur. Co. of New York v. Bethlehem Nat'l Bank of Bethlehem*, 314 U.S. 314, 315 (1941).  Iowa's Supreme Court has described equitable subrogation as "a doctrine that originated in equity to give relief to a person or entity that pays a legal obligation that should have, in good conscience, been satisfied by another." *Wilson*, 770 N.W.2d at 328.  Put simply, subrogation is the substitution of one party for another with regard to certain rights. *See Allied Mut. Ins. Co.*, 675 N.W.2d at 824 n.1.  "The rights to which the subrogee succeeds are the same as, and no greater than those of the person for whom the subrogee is substituted.  The subrogee can acquire no claim, security, or remedy that the subrogor does not have." *Central Nat'l Ins. Co.*, 522 N.W.2d at 44; *see also Heritage Bank v. Lovett*, 613 N.W.2d 652, 653 (Iowa 2000); *Grinnell Mut. Reinsurance Co.*, 561 N.W.2d at 69 (noting a subrogee "merely steps into the shoes of the subrogor" and has no greater rights than those of the subrogor).

In the context of insurance law, the doctrine has emerged to permit "an insurer who has paid a loss to an insured to become 'subrogated in a corresponding amount to the insured's right of action against any other person responsible for the loss.'" *Wilson*, 770 N.W.2d at 328 (citing

*Allied Mut. Ins. Co.*, 675 N.W.2d at 824).  The rights of subrogation often arise by contract.  *Id.* However, "even when the insurance contract does not explicitly provide for them, '[t]he insurer's right to subrogation attaches by operation of law upon payment of the loss based on principles of equity.'"  *Id.* (citing *Allied Mut. Ins. Co.*, 675 N.W.2d at 824 n.2).  It has been asserted that the doctrine is needed in insurance "to preserve the principle of indemnity."  *Allied Mut. Ins. Co.*, 675 N.W.2d at 824.

Subrogation is grounded on "principles of natural equity" and its purpose is to "prevent injustice."  *State, Dept. of Human Services ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 156 (Iowa 2001).  Without the doctrine, a person who is secondarily liable would not have a cause of action against the unjustly enriched party.  *Id.*  "Thus, the rationale for subrogation is 'bottomed on a sensitivity to the comparative equities involved.'"  *Id.*  Equitable subrogation "will never be enforced, when doing so would be inequitable, or where it would work injustice to others having equal equities."  *Am. Sur. Co. of New York v. State Trust & Sav. Bank of Mt. Pleasant*, 254 N.W. 338, 340 (Iowa 1934).  Importantly, one that is primarily liable for a debt cannot receive equitable subrogation.  *In re Hagen*, 147 B.R. at 168.

Under Iowa law, to invoke the doctrine of equitable subrogation a claimant must fully satisfy a five-part test: (1) the claimant must have made payment to protect his own interest; (2) the claimant must not have been a volunteer; (3) the payment must satisfy debt for which the claimant was not primarily liable; (4) the entire debt must have been paid; and (5) subrogation must not cause injustice to the rights of others.  *See In re Chapala Intern., Inc.*, No. 94–1208–CH, 1995 WL 17911422, at *3–4; *see also In re Hagen*, 147 B.R. at 167.

### a. Summary of the Arguments Regarding Weitz's Equitable Subrogation Claim

According to Lexington/Allied, Weitz has already recovered from other subcontractors and insurers $2,799,684 more than Weitz paid Hyatt to settle.  [Dkt. No. 148-1 Pages 18, 20.] Thus, Weitz is seeking a windfall of millions of dollars.  Lexington/Allied contend that because Weitz brings an equitable subrogation claim, a form of restitution, Weitz cannot recover as Weitz has "already recouped from various sources all that it paid to Hyatt."  [Dkt. No. 148-1 Page 19.] Equity does not allow a double recovery.  Weitz omitted the fact that it sought to recover on the basis of assignments of putative subrogation rights in its complaints.  Instead, Weitz argued it was entitled to recover based on equitable subrogation.  Lexington/Allied assert that Weitz failed to disclose, until its second supplemental initial rule 26 disclosures on April 6, 2012, that its

claim for recovery was based almost entirely on assignments of putative subrogation rights entered into in 2009 and early 2010.  [Dkt. No. 148-1 Pages 20–21.]  These assignments are immaterial, Lexington/Allied argue, as Weitz (Hyatt's putative subrogee) is entitled to only a single recovery.  "[Weitz's] rights against Defendants as putative subrogee are derivative of, and no greater than, Hyatt's, the putative subrogor."  [Dkt. No. 164 Page 8.]  Weitz recovered the only sum from its pleadings that is reimbursable, which is the Hyatt settlement payment.

Weitz contends that it received "valid assignments" from its insurers and subcontractors.  "It is well established that a party which receives a valid assignment of another's right to pursue a debt steps into that party's shoes and receives all rights and interests of the assigning party with respect to that debt."[15]  [Dkt. No. 156 Page 15.]  Because Weitz settled with Hyatt for $53 million and forewent a $4,963,404.18 counterclaim against Hyatt, Weitz in essence "paid" Hyatt approximately $57,963,458.  Hence, Weitz is permitted to seek in equity the amounts it paid to Hyatt for property damage that was covered by Lexington/Allied.  Weitz does not seek "double recovery" because the subcontractors or insurers would be able to pursue claims against Lexington/Allied "without being accused of seeking a 'double recovery.'" [Dkt. No. 156 Pages 16–17.]  Weitz was not made whole for its losses on the Aventura Project.

Weitz repeats to the Court that Lexington/Allied do not challenge the validity of the assignments that Weitz received.  Weitz asserts that there is no federal or local rule, nor any precedent cited by Lexington/Allied that supports the proposition that assignments must be "plead specifically."  [Dkt. No. 156 Page 18.]  It is also false that Weitz only now revealed the assignments.  Rather, Weitz refers this Court to its supplemental initial disclosures from September 8, 2011 that imply Weitz was seeking damages based on assignments, and correspondence dating as early as October 17, 2011 between Weitz and Lexington/Allied that explicitly included the term "assignments."  [Dkt. No. 156 Page 19.]

### b. Analysis of the Arguments Regarding Weitz's Equitable Subrogation Claim

The principal issue remains the same as the one discussed in this Court's denial of Defendants' motions to dismiss on May 25, 2011.  That is, "whether any portion of the settlement amount [between Weitz and Hyatt] was a liability the Defendants owed [to Weitz]."

---

[15] Weitz writes elsewhere in its brief, "Weitz is not contending that its contract balance is a covered damage under Defendants' policies, *nor is Weitz somehow 'stepping into Hyatt's shoes' with respect to this contract balance claim*." [Dkt. No. 156 Pages 29–30.]  (emphasis added).

[Dkt No. 89 Page 22.]  Because this Court found it was plausible that "Weitz paid a sum in excess of its own liability, knowing it preserved its right to bring claims against Defendants," this Court did not grant Defendants' motions to dismiss.  [Dkt. No. 89 Page 22.]  This Court now finds that the damages presented here by Weitz are not unrelated to those negotiated in the settlement agreement between Lexington/Allied and Hyatt, and the money Weitz paid Hyatt resulted from Weitz's own liability.  Weitz also does not attribute to the Defendants a specific portion of its settlement amount with Hyatt.[16]  Furthermore, this Court finds that Weitz failed to meet the elements of an equitable subrogation claim.  *See In re Chapala Intern., Inc.*, 1995 WL 17911422, at *3–4; *see also In re Hagen*, 147 B.R. at 167.[17]  Below the five-part test for an equitable subrogation claim is applied to the material facts of this case.

First, Weitz made a payment to Hyatt to protect its own interests and pay its own liability to Hyatt.  Weitz settled with Hyatt for $53 million and allegedly forewent a $4,963,404.18 counterclaim in order to end costly litigation, and it received assignments from "lower-tier settling parties" in order to recover against the Defendants.  [Dkt. No. 156 Page 16.]

Second, Weitz's payment was voluntary in the interest of settling its own liability and debt with Hyatt.  Weitz voluntarily entered into settlement agreements with Hyatt, and paid $53 million to Hyatt.

Third, Weitz's payment to Hyatt did not satisfy a "debt for which the claimant was not primarily liable."  *In re Chapala Intern, Inc.*, 1995 WL 17911422, at *3–4.  Weitz's payment was not for a debt owed by the Defendants.  Weitz simply contends that the Defendants owe $53 million based on Weitz's settlement with Hyatt, plus an additional $4,963,404.18 for a counterclaim that Weitz allegedly forewent against Hyatt.  [Dkt. No. 156 Page 16.]  Yet, as Lexington/Allied point out, Weitz "never impleaded the Defendant insurers on contingent third-

---

[16] Weitz merely alleges without explanation that "more than $60 million of Hyatt's original $102 million claim for damages was covered under the Defendant insurers' respective policies."  [Dkt. No. 156 Page 16.]

[17] In its brief in opposition to Lexington/Allied's motion for summary judgment, Weitz refers to the five elements required to prove an equitable subrogation claim.  [Dkt. No. 156 Pages 22–21.]  However, Weitz does not allege how the material facts satisfy the elements.  Instead, Weitz argues, "As set forth in Section II above, material facts of record clearly establish each of these elements."  [Dkt. No. 156 Page 21]; [Dkt. No. 166 Page 7]; [Dkt No. 165 Page 9.]  Weitz's second amended complaint refers to the elements of an equitable subrogation claim, but the complaint also does not adequately indicate how the material facts satisfy the elements of the claim.  [Dkt. No. 68 Pages 6–7.]

party subrogation claims as part of the Florida Action [with Hyatt] . . ." [Dkt. No. 164 Page 13.]
To date, Weitz has also collected $55.8 million in connection with the settlement with Hyatt
from liability insurers, subcontractors, and the liability insurers and sureties of the
subcontractors.  The amount Weitz collected is more than $2.8 million above the settlement
payment Weitz made to Hyatt.  Even if the assigning parties could have pursued Defendants
themselves without being accused of "double recovery," Weitz seeks to recover from Defendants
as a subrogee of Hyatt's rights, and in equity, Weitz cannot be reimbursed twice.  *See Allied Mut.
Ins. Co.*, 675 N.W.2d at 828.

     Fourth, Weitz did not pay any amount for which the Defendants were liable.  Rather, it
appears from the record that any debt Lexington/Allied owed Hyatt was resolved by the
$750,000 settlement agreement negotiated between Lexington/Allied and Hyatt in November
2005.  The facts indicate that the approximately $53 million that Weitz paid to Hyatt was to
settle its own debt.  "One cannot seek subrogation for paying one's own debts."  *In re Hagen*,
147 B.R. at 168; *see also Brown v. Sheldon State Bank*, 117 N.W. 289, 293 (Iowa 1908)
("Subrogation is allowable in equity, only in favor of a person who has advanced money to pay
the debt of another, to whom he stood in the position of surety, or where he has been compelled
to pay the debt of another to protect his own rights . . .  It is never allowed in favor of a person
who is himself personally liable for the debt he discharges by payment").  The facts also indicate
that the alleged $4,963,404.18 counterclaim that Weitz forewent against Hyatt was based on a
breach of Hyatt's construction-contract obligation with Weitz.[18]  Yet, Lexington/Allied's policies
only insured against "direct physical loss or damage" to the property, not breaches of contract.
[Dkt. No. 148-1 Page 36.]  It is perplexing that Weitz—after dismissing all its claims against
Hyatt in the Hyatt/Weitz settlement agreement of approximately $53 million—argues that it
"paid" $57,963,458 to Hyatt because it did not pursue a counterclaim.

     Finally, granting Weitz subrogation rights would cause injustice to the rights of others as
it would misapply the Defendants' insurance policies and create coverage where it does not (and

---

[18] Weitz argues that Lexington/Allied, as the property insurers, were obligated to pay
covered property damage for the benefit of Weitz and its subcontractors based on §7N of their
construction contract.  [Dkt. No. 156 Page 18.]  Section 7N provides, "Owner and Contractor
waive all rights against each other and any of the Subcontractors, any Separate Contractor and
their respective agents and employees, each of the other, for damages caused by fire or other
perils to the extent covered by property insurance . . ."  [Dkt. No. 156 Page 18.]

should not) exist.  This is because Weitz has already recovered more than it paid Hyatt to settle. Subrogation is an equitable remedy that is meant to make the subrogee whole; it is not meant to allow double recovery.  *See Allied Mut. Ins. Co.*, 675 N.W. 2d at 828 ("[R]esolution of subrogation issues is guided by the equitable principle that the injured party is entitled to be made whole but not allowed a double recovery").

Weitz is barred from recovery because its claims are "subject to any defenses" that may have been put forth against Hyatt, such as the release, notice-of-loss provision, and suit limitation periods in the Defendants' insurance policies. *Central Nat. Ins. Co., of Omaha*, 522 N.W.2d at 44.  In addition, in considering Weitz's equitable subrogation claim, this Court must be thoughtful of the "comparative equities involved." *State, Dept. of Human Services ex rel. Palmer*, 637 N.W.2d at 156.  This Court is unconvinced that Weitz paid a debt that ought to have been paid by the Defendants.  Nor is this Court persuaded that Weitz was not personally liable for the debt that it paid to Hyatt for approximately $53 million.  Even if Weitz received assignments, such assignments do not add anything to Weitz's subrogation claim in equity. *See Lennar Homes, Inc. v. Masonite Corp.*, 32 F. Supp. 2d 396, 400 (E.D. La. 1998); *see also In re Ted True, Inc.*, 94 B.R. 423, 427 (Bankr. N.D. Tex. 1998) ("Where a right to subrogation exists, the general rule is that an assignment adds nothing to the right; recovery is by virtue of a right in equity, not by virtue of a legal right under an assignment") (citing 73 AM.JUR.2d *Subrogation* § 111, at 670 (1974)). All of which leads this Court to find that there is a lack of a genuine issue of material fact regarding the elements of equitable subrogation, or that a reasonable jury could return a verdict for Weitz.  *See Celotex Corp.*, 477 U.S. at 323.  Therefore, Defendants are entitled to summary judgment on the first count in Weitz's second amended operative complaint.

**2. Unjust Enrichment**

"Under Illinois law, unjust enrichment is not a separate cause of action." *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trusts*, 631 F.3d at 447; *see also Mulligan*, 888 N.E.2d at 1200.  Illinois courts will find that "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *See Cleary*, 656 F.3d at 517; *see also Control Solutions,* 2012 WL 3096678, at *10.  Put another way, if an underlying substantive claim fails, then the unjust enrichment claim fails because it is dependent on the viability of the separate substantive claim. *See, e.g., Pearson v. Garrett-*

*Evangelical Theological Seminary, Inc.*, 790 F. Supp. 2d 759, 769 (N.D. Ill. 2011) (finding that "[b]ecause no other counts remain, a claim for unjust enrichment cannot stand").

Here, because this Court finds that Weitz's equitable subrogation claim fails as a matter of law, it also finds that Weitz's unjust enrichment claim fails as a matter of law. *See Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trusts*, 631 F.3d at 447.  Therefore, the Defendants are also entitled to summary judgment on the second count in Weitz's second amended operative complaint.

## V. DISPOSITION

For the foregoing reasons, **IT IS ORDERED** that the Defendants' motions for summary judgment are GRANTED, and final summary judgment is entered for the Defendants on all of Weitz's claims. The Clerk shall enter judgment accordingly.

**DATED** this 13th day of November, 2013.

JOHN A. JARVEY
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF IOWA